**JOSHUA M. SASAKI** (OSB No. 964182)
josh.sasaki@millernash.com
**MAX L. FORER** (OSB No. 161162)
max.forer@millernash.com
**ERIC R. MILLS** (OSB No. 194224)
eric.mills@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

*Additional Attorneys in Signature Block*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OLIVIA MOULTRIE, by and through her parent and guardian, K.C. MOULTRIE,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL WOMEN'S SOCCER LEAGUE, LLC,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>(Sherman Antitrust Act – Section One)<br><br>(15 U.S.C. §§1, 15, 26)<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 -   COMPLAINT

Plaintiff alleges as follows:

## INTRODUCTION AND SUMMARY

1. Plaintiff Olivia Moultrie (referred to hereafter as "Plaintiff" or "Ms. Moultrie"), by her guardian and father K.C. Moultrie, brings this action to challenge her ineligibility to play in the National Women's Soccer League ("NWSL" or the "League").

2. Ms. Moultrie is a 15-and-one-half-year-old soccer prodigy and has the skills to play in the NWSL. The League asserts that she is ineligible and that it has an 18-year-old minimum age limit (hereinafter the "Age Rule") and that the Age Rule has been in effect since 2013, but the League has yet to provide evidence of when or how the Age Rule was enacted, precisely what it says, or for what purposes it was enacted. Ms. Moultrie and her agent were not aware of the Age Rule until relatively recently, and on information and belief, neither were many involved in women's soccer, including National Team Captain Becky Sauerbrunn.

3. The Age Rule violates Section One of the Sherman Act, 15 U.S.C. § 1. Courts uniformly overturn age limits in sports leagues under the Sherman Act, including in a Ninth Circuit litigation (with a trial court injunction permitting an athlete to play reinstated by the Supreme Court), unless they are agreed to by a labor union through a Collective Bargaining Agreement ("CBA"). *Denver Rockets v. All-Pro Mgmt., Inc.*, 325 F. Supp. 1049 (C.D. Cal 1971), *reinstated by Haywood v. Nat'l Basketball Ass'n*, 401 U.S. 1204 (1971). The players in the NWSL do not have, and have never had, a CBA. In contrast, although *Denver Rockets* overturned the NBA's age rule of that time, the NBA now has a "one and done" rule, impervious to antitrust litigation, because it was agreed to by the players' union in a CBA. The same legal principles have been applied and litigated in football and hockey—no age limit is permissible unless agreed to in a CBA between management and a union.

4. The Age Rule also stands out as highly unusual in world soccer, male or female. Major League Soccer ("MLS"), the comparable men's league in the U.S., has no age limit, and has had many players under 18, and the same is true with women's (and men's) major

professional soccer leagues around the world.  Alphonso Davies, who has played in at least 30 games this year for Bayern Munich in Germany, is a recent example of the many men who have played in MLS before they were 18—he debuted in MLS at the age of 15 in 2016.  On information and belief, as of the date of this Complaint, more than half of MLS teams have one or more player(s) on their first team roster under the age of 18.  The only limitation is a FIFA rule that requires women under 18 to play in their home countries.

5.     On information and belief, many other accomplished men and women have played in overseas first-tier professional leagues before they were 18, including in France, England, Italy, Spain, Portugal, the Netherlands, Norway, and other countries.

6.     In other words, Ms. Moultrie would be eligible to play in MLS if she were male, would be able to play in France if she were French, etc., stretching throughout most of the international soccer world.  Ms. Moultrie is in the wrong country, and the wrong gender, to take advantage of her soccer precocity.  And illegally so.

7.     Even more bizarre, Ms. Moultrie is also old enough to play for the U.S. Women's National Team (*e.g.,* Mallory Pugh, Heather O'Reilly, and others have played for the National Team at or before age 17), but she cannot play in the League which provides experience for almost all the players for the National Team.  She is being deprived not only of a professional career, but of the chance to further hone her skills in preparation for a National Team tryout.

8.     Ms. Moultrie has for some time had an arrangement with the Portland Thorns of the NWSL to be treated like a team member in all ways other than signing a player contract and playing in games.  She practices with the team, plays in unofficial "scrimmages" and pre-season games against other professional teams, has her own locker in the Thorns' locker room, and also takes part in practices with the Portland Timbers' Under-17 **men's** Academy Team.

9.     Thus, Ms. Moultrie practices and scrimmages with professionals, but cannot play in any official games that count.  There are no alternative leagues for her to obtain experience in competitive games.  Practice and scrimmages do not take the place of competing when it counts,

against the highest level of competition in the U.S., learning to play through the lows of mistakes and losses and to find a way to succeed and win. Thus, the Age Rule threatens to hinder her development as a soccer player, and to continue to do so for another two-and-one-half years.

10. Ms. Moultrie does not seek an order from this Court awarding her a contract or roster slot. Rather, she seeks removal of an unlawful barrier to her participation. If no NWSL team wants Ms. Moultrie, she will not sign a contract or be added to a roster. If she does not prove ready, she will not play. However, her talent suggests that, but for the Age Rule, Ms. Moultrie would quickly obtain a player contract in the NWSL as teams would be eager to add her to their roster.

11. The 2021 NWSL season began on April 9 with the 2021 Challenge Cup tournament, and ends in November. Regular season games begin on May 15. Rather than wait months or an additional year or more while this litigation is pending, or an additional two-and-one-half years if the Age Rule is not overturned, Ms. Moultrie seeks preliminary injunctive relief so that she can play in the League now.

## PARTIES

12. Plaintiff Ms. Moultrie is a minor child and, accordingly, brings the claim herein by and through her father and guardian, K.C. Moultrie. Ms. Moultrie and K.C. Moultrie are individuals residing in Wilsonville, Oregon.

13. Defendant NWSL is a limited liability company organized under the laws of Delaware, with its principal office in Chicago, Illinois.

## UNNAMED CONSPIRATORS AND FACILITATORS

14. Various other persons and entities (including, but not limited to, the ten teams of the NWSL and the U.S. Soccer Federation ("USSF")) have actively participated with the League in the violations alleged in this Complaint, or have facilitated the violations, and may continue to do so. On information and belief, any age limitation imposed by NWSL is the result of a vote of the teams and/or can be repealed by a vote of the teams. On information and belief, USSF has a

close relationship with both the League and MLS, pays or subsidizes, either directly or indirectly, the compensation of certain NWSL players, and could insist that NWSL withdraw its Age Rule to avoid charges of illegality under the antitrust laws and to avoid gender discrimination in U.S. Soccer. Plaintiff reserves the right to add any and all such parties as defendants herein, or to add claims of gender discrimination, as necessary or appropriate.

## JURISDICTION AND VENUE

15. This action is brought under §§ 4 and 16 of the Clayton Act, as amended (15 U.S.C. §§ 15, 26), alleging violations of § 1 of the Sherman Act, as amended (15 U.S.C. §1). Additionally, this Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1337.

16. Venue in this District is proper under §§ 4 and 12 of the Clayton Act, as amended (15 U.S.C. §§ 15, 22) and 28 U.S.C. § 1391. Plaintiff resides in and is found in the District of Oregon in this Division. Defendant has a member team, the Portland Thorns, in this District, and both the League and the Thorns transact business here regularly. Ms. Moultrie has an arrangement with the Thorns, described above in detail, under which she practices but does not play with the team, and expects and understands that the Thorns would sign her to a player contract if they could. Thus, the illegal restraint and resulting interference with Ms. Moultrie's right occurs, at least in substantial part, in the District, and its impact is felt in this District, where her ineligibility for League play affects her activities with the Thorns.

## INTERSTATE COMMERCE

17. The business of women's professional soccer, and the business of NWSL, is a part of interstate commerce. The League has ten teams in ten states, and each team travels to each of those states regularly to play games. Many of those games are broadcast around the United States on TV, radio, and/or the internet pursuant to contracts entered into by the League and/or its teams.

## OPERATIVE FACTS SUPPORTING CLAIM

### Ms. Moultrie's Soccer History

18. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

19. Ms. Moultrie was born in September 2005 and raised in California. She showed exceptional talent as a soccer player at a very early age.

20. Ms. Moultrie was recruited by dozens of universities by the time she was 11. At that time, she announced she would attend the University of North Carolina, a perennial power in women's soccer, making her the youngest recruit in the program's history.

21. At age 13, as her talents developed, Ms. Moultrie changed her plans and decided to begin preparing for a professional career. In an interview about Ms. Moultrie's decision to go pro, the UNC coach who recruited her, Anson Dorrance who has been coaching women's soccer for decades and won 22 national championships with UNC, stated: "I knew as soon as she decided to join that she may never get here." Coach Dorrance went on to say, "I thought she was outstanding. I thought her skill set was there, her tactical understanding of the game was there. And for someone so young that have all these pieces, I had no issue with her deciding to commit to us knowing fully well that it was possible we were never going to see her." In that same article, Heather O'Reilly, a veteran of the U.S. Women's National Team and player on the Carolina Courage, said Ms. Moultrie's decision it was a great step for women's sports and said she would be rooting for Moultrie.[1]

22. To prepare for her professional career, Ms. Moultrie did four things:

    (a) she advised the University of North Carolina that she had decided not to play college soccer;

---

[1] *See* 13-year-old soccer player drops commitment to UNC—she's going pro, Mandy Mitchell, AP News, Mar. 29 2019, *available at* https://apnews.com/article/a06ee2daab76df80ded2c8d84675e7c4.

Page 6 -    COMPLAINT

(b)     she made the arrangement with the Thorns described above, whereby she would be treated in all ways as a member of the team, except that she did not sign a professional contract and could not play in official games.  She could, however, participate in practice and play in scrimmages and unofficial games with Thorns' players and against players from other NWSL teams;

(c)     her family moved to Portland to care for her and to facilitate all of this activity with the Thorns; and

(d)     because of her professional and national team potential, she signed a nine-year endorsement contract with Nike, making her the youngest team sport player ever to be signed by Nike.

23.     At the time of these activities, *The New York Times* reported that Ms. Moultrie had "already drawn worldwide attention for her prodigious technical skills," and recounted her worldwide visits to "train with some of [Europe's] biggest clubs: Olympic Lyon and Paris St. Germain in France and Bayern Munich in Germany."  On information and belief, the European clubs would have offered her a position on their teams, but FIFA rules prohibit women under 18 from playing outside their home country, based principally on sex trafficking concerns raised by certain illicit activities with young, female, purported soccer players.

24.     At the time Ms. Moultrie signed with Nike and moved to Portland, she and her agent were not aware of the Age Rule or any other minimum age restriction by the NWSL.

25.     Since her move to Portland, Ms. Moultrie has continued to grow, mature, and enhance her soccer skills.  She, her parents, and her agent believe that she is ready to play in the League, as do the Thorns.  But for the Age Rule, she would already be playing.

### The NWSL's Market Power

26.     The NWSL is the only women's professional soccer league in the U.S.  It has market power in the labor market for women professional soccer players in the U.S.  Indeed, it is a monopsony in that market.

**The NWSL's Structure**

27.     The NWSL has ten teams.  Certain players that play for the U.S. Women's National Team or the Canadian Women's National Team are specifically "allocated" to teams throughout the league ("Allocated Players").  Allocated Players sign different contracts, are paid differently, and are subject to different sets of roster and salary rules, policies, and/or procedures from all other NWSL players ("Non-Allocated Players").  Those rules, policies, and procedures, along with the players' contracts, determine the details of their employment.  Although the Non-Allocated Players have formed a union (the "Players' Association") that has been recognized by the League, no CBA is or ever has been in place between the League and the Players' Association.

28.     On information and belief, negotiations for a CBA between the League and the Players Association began after Ms. Moultrie advised the League of her antitrust objections to the Age Rule.  Most certainly, no concrete proposal for a CBA had been exchanged until late March 2021.  Most initial CBAs for sports leagues have taken years to negotiate, since each provision must be negotiated from scratch.  There is no reason to believe that a CBA will be agreed and ratified this season, permitting Ms. Moultrie to play, or barring her from playing, or more likely not addressing the age issue at all, like the MLS CBA.  Indeed, the only formal proposal made so far does not include an age limitation.

29.     Each NWSL team has a separate owner.  Each team owner is seeking to win games and make money.  On information and belief, some teams are profitable, others are not.  To win games, each team seeks to hire the best players.  The teams compete to obtain the best players, consistent with NWSL rules, in order to win more games, and also in order to draw more fans, sell more food and club merchandise, sell more advertising, and earn more money.  In particular, while player salaries are paid or subsidized, either directly or indirectly, by the League or USSF, each team may use its own funds to pay individual players significantly more than would otherwise be permitted by the League's salary cap or to pay an acquisition/transfer fee for

a particular player the team wishes to acquire but who is currently under contract outside of NWSL. Thus, the teams are independent businesses and competitors in many ways, including in the labor market for players, and resemble in many ways teams in other sports leagues in the U.S., such as Major League Baseball, the National Basketball Association, and the National Football League.

30. Although the teams, like those in all professional sports leagues, may share some expenses and some revenues, they are competitors on the field, and for fans, revenues, and players. On information and belief, they hire and pay their own staff; train their own players; enter into their own contracts with vendors, sponsors, and advertisers; and market and sell merchandise and tickets.

### Ms. Moultrie's Repeated Requests to Play

31. Plaintiff, through her agent Spencer Wadsworth, has contacted the League several times beginning in or about 2019 to inquire about or request that Ms. Moultrie be allowed to play in the League. He was rebuffed on each occasion, with NWSL confirming its unwillingness to permit Ms. Moultrie to join the League.

32. In response to recent suggestions by Plaintiff, through her counsel, that Ms. Moultrie be allowed to play and that the League's enforcement of the Age Rule violates the Sherman Act, the League has again rebuffed those requests, repeatedly claiming that it is a "single entity" that cannot conspire with itself for antitrust purposes. However, the League has declined to provide any information or documents regarding its economic structure, despite Plaintiff's requests, nor any explanation of the reasons for or justifications of its Age Rule.

### Monetary Injury; Irreparable Injury

33. As a direct and proximate result of NWSL's actions alleged herein, Plaintiff has suffered and will suffer injury to her "business or property" as that term is understood under the Sherman Act, and that injury will grow so long as the League prevents her from playing in the League. If not for the League's policies and practices, Ms. Moultrie would have been eligible to

and would have already signed a professional contract to play for one of NWSL's teams, and could have signed a contract to do so last season.

34. In addition to monetary damages, Plaintiff's career is being irreparably harmed by the Age Rule. Plaintiff is only allowed to practice with the Thorns, not play in official games, hindering her growth as a player, making her less valuable to a League member team when she starts playing, reducing the value of potential marketing opportunities, and finally, delaying her likelihood of being invited to seek a place on the U.S. Women's National Team, and making the team, or the U.S. Olympic team.

35. Keeping Ms. Moultrie out of the League will continually slow her development, delay her improvement, and more generally impede her career as a soccer player. Playing against top professional competition, when the opponents play their hardest and when her success or failures have real world consequences, is an opportunity for Ms. Moultrie to learn that cannot be replicated by practices, exhibition games, drills, or otherwise. There is no substitute for real competition at the highest level of the sport. Indeed, she may regress from lack of professional game competition for months or years.

36. A soccer player's career is finite, and time lost may never be regained. If Ms. Moultrie spends months or years barred from the League, there is no way to recover that time, experience, and exposure, and no way to compensate in money damages the hindering and delaying of her game-ready status and skills.

37. This slowing of Ms. Moultrie's maturation will have a ripple effect that may diminish her performance and her earnings in each of several upcoming years.

38. Monetary damages cannot adequately compensate Plaintiff for the irreparable harm she has and will suffer, which necessitates preliminary and permanent injunctive relief. The missed opportunity to play for the National Team or in the Olympics cannot be compensated with money.

## CLAIM FOR RELIEF

### (Sherman Antitrust Act – Section One)

39. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

40. The ten teams in the NWSL have agreed among themselves, and with the League, not to contract with soccer players under the age of 18, without regard to their talents or their ability to compete in the League. That is precisely what the antitrust laws prohibit, absent an exemption from those laws, such as the labor exemption which would exempt an age limit agreed to by the players themselves, through the Players' Association, in a formal CBA.

41. The Relevant Market for antitrust purposes is the labor market for professional women soccer players in the United States. The NWSL, together with its member teams and USSF, is the only acquirer of talent in this market. For the reasons stated above concerning foreign leagues and FIFA rules, Ms. Moultrie and other American players under 18 have no reasonable alternative opportunity to play professional soccer.

42. This unlawful group boycott has caused harm to Plaintiff's business or property, and threatens to cause her further and irreparable harm.

43. Group boycotts are per se illegal under Section 1 of the Sherman Act, and a group boycott precisely like this one has been found per se illegal in a Ninth Circuit proceeding that reached the U.S. Supreme Court. *Denver Rockets*, 325 F. Supp. 1049, *reinstated by Haywood*, 401 U.S. 1204.

44. Alternatively, this restraint constitutes a Rule of Reason violation of Section One of the Sherman Antitrust Act, subject to the "quick look" doctrine, because the League and its teams, by jointly agreeing to restrict player eligibility to those 18 or over, have contracted, combined, and conspired to restrain trade in the relevant market. There are no legitimate business justifications for, or procompetitive benefits attributable to, the Age Rule. Indeed, although a pro-competitive justification is required by law, the League has, despite several

opportunities, yet to even purport to identify any legitimate justification at all. To the extent any alleged pro-competitive (or other) benefits of the Age Rule do exist, they can be achieved through less restrictive means.

45. The fact that such age limits are virtually non-existent in other men's and women's soccer leagues around the world weighs heavily against there being any justification for the rule. If male Americans can play in MLS at age 15, and female Europeans can play in their countries at age 15, there is nothing different about an American young woman, or the NWSL, that justifies the opposite rule.

46. Ms. Moultrie has sustained damages as a result of the Age Rule, which has prevented her from signing and being compensated pursuant to a professional contract, and has harmed her professional career.

47. Ms. Moultrie is entitled to injunctive relief as provided by 15 U.S.C. § 26 and declaratory relief as provided by 28 U.S.C. § 2201. She is further entitled to recover treble damages, prejudgment interest, and her reasonable attorneys' fees, litigation expenses, and costs as provided by 15 U.S.C. § 15, and post-judgment interest as provided by 28 U.S.C. § 1961.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests trial by jury and prays for relief as follows:

A. A temporary restraining order, a preliminary, and later a permanent, injunction prohibiting the League, its members, officers, agents, servants, employees, attorneys, teams, and all persons in active concert or participation with them from preventing or interfering with, or from taking any other action, directly or indirectly, to prevent or interfere with Ms. Moultrie playing professional soccer on the roster of an NWSL team, unless and until such Age Rule is contained in a fully effective collective bargaining agreement that would apply to her, as permitted by law;

  B. A declaration that the Age Rule violates Section One of the Sherman Act and is therefore unenforceable, unless and until such Age Rule is contained in a fully effective collective bargaining agreement that would apply to Ms. Moultrie, as permitted by law;

  C. An order that the League shall not prevent Ms. Moultrie from signing to a player contract to play in the NWSL notwithstanding her age;

  D. Treble damages to be proven at trial, plus pre- and post-judgment interest as provided by law; and

  E. Reasonable attorneys' fees, litigation expenses, and costs, to be determined by the Court.

  DATED this 4th day of May, 2021.

          MILLER NASH GRAHAM & DUNN LLP

          *s/ Joshua M. Sasaki*
          Joshua M. Sasaki (OSB No. 964182)
          josh.sasaki@millernash.com
          Max L. Forer (OSB No. 161162)
          max.forer@millernash.com
          Eric R. Mills (OSB No. 194224)
          eric.mills@millernash.com
          Telephone:  503.224.5858
          Facsimile:  503.224.0155

          – and –

LAW OFFICES OF LEONARD B. SIMON
Leonard B. Simon (CA Lic. No. 58310)
(*pro hac vice forthcoming*)
lens@rgrdlaw.com
Telephone:  619.818.0644
Facsimile:  619.231.7423

– and –

GUSTAFSON GLUEK PLLC
Dennis Stewart (CA Lic. No. 99152)
(*pro hac vice forthcoming*)
dstewart@gustafsongluek.com
Telephone: 619.595.3299
Facsimile: 612.339.6622

Michelle J. Looby (MN Lic. No. 0388166)
(*pro hac vice forthcoming*)
mlooby@gustafsongluek.com
Mickey L. Stevens (MN Lic. No. 0398549)
(*pro hac vice forthcoming*)
mstevens@gustafsongluek.com
Telephone: 612.333.8844
Facsimile: 612.339.6622

Attorneys for Plaintiff