# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **O.M.**, by and through her parent and guardian, **K.C. MOULTRIE**, | Case No. 3:21-cv-00683-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NATIONAL WOMEN'S SOCCER LEAGUE, LLC**, | |
| Defendant. | |

Eric R. Mills, Joshua M. Sasaki, Bruce L. Campbell, Max Louis Forer, Miller Nash LLP, 111 SW Fifth Avenue, Suite 3400, Portland, OR 97204; Dennis Stewart, Michelle J. Looby, Mickey L. Stevens, Gustafson Gluek pLLC, 120 South 6th Street, Suite 2600, Minneapolis, MN 55404; Leonard B. Simon, Law Offices of Leonard B. Simon P.C., 655 West Broadway, Suite 1900, San Diego, CA 92101. Attorneys for Plaintiff.

Christopher St. John Yates, Elizabeth Hays Yandell, Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, CA 94111; David H. Angeli, Michelle Holman Kerin, Peter D. Hawkes, Angeli Law Group LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97205; Anna M. Rathbun, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, DC 20004; Lawrence E. Buterman, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is Plaintiff's Motion for a Temporary Restraining Order ("TRO") and

Preliminary Injunction. ECF 2. Plaintiff, a 15-year-old soccer player, seeks an order from this

Court enjoining Defendant National Women's Soccer League ("NWSL") from enforcing against her its rule that all players in the league must be at least 18 years old (the "Age Rule"). Plaintiff does not seek an order requiring the NWSL or any of its member teams to hire her. Further, Plaintiff does not seek an order that interferes with negotiations between the NWSL and the NWSL Players Association ("NWSL PA"). Plaintiff concedes that if the NWSL and the NWSL PA enter into a collective bargaining agreement ("CBA") that includes an age restriction, she could lose her ability to play for the NWSL until she is age-eligible and would not have grounds to challenge such a restriction. Through this TRO, Plaintiff solely seeks the opportunity to compete for a position on a professional soccer team free from the Age Rule's restrictions.

Plaintiff filed both her Complaint and TRO Motion on May 4, 2021. ECF 1; ECF 2. Plaintiff's Complaint challenges the NWSL Age Rule as a violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, and argues that "[t]he ten teams that make up the NWSL have agreed among themselves, and with the League, not to contract with soccer players under the age of 18, without regard to their talents or ability to compete in the League." ECF 1 at ¶ 40. Plaintiff further argues that NWSL is the only option for women to play professional soccer in the United States, and that the Age Rule serves no legitimate business justification or procompetitive purpose. *Id.* at ¶¶ 41, 44.  Plaintiff points to the absence of any age restrictions for male soccer players to demonstrate that the public interest in open competition and equal treatment of women favors a TRO in this case. *Id*. at ¶ 45. Plaintiff asserts that keeping her out of the NWSL, which has already started its season of games, "will continually slow her development, delay her improvement, and more generally impede her career as a soccer player." *Id*. at ¶ 35.

On May 20, 2021, this Court held a hearing on Plaintiff's TRO Motion at which both sides had an opportunity to present additional evidence and argument.[1] ECF 46. After considering testimony at the hearing, as well as the pleadings, declarations, exhibits, and arguments of counsel, this Court finds that Plaintiff has presented facts and legal support sufficient to warrant a TRO enjoining the enforcement of the Age Rule against her until a preliminary injunction hearing is held. As explained further below, Plaintiff has shown that the ten teams that make up the NWSL have agreed to impose the NWSL's age restriction which excludes female competitors from the only available professional soccer opportunity in the United States because they are under 18, regardless of talent, maturity, strength, and ability. Defendants have not presented any compelling procompetitive reasons to justify this anticompetitive policy, nor have they shown that eliminating the Age Rule will cause any non-speculative injury to the NWSL. Defendants have offered no legitimate procompetitive justification for treating young women who want an opportunity to play professional soccer differently than young men.

In contrast, Plaintiff has presented persuasive evidence that each day that passes with the Age Rule in place represents a missed opportunity for her potential professional soccer career. Accordingly, this Court finds that the merits clearly favor Plaintiff's position and that she will be irreparably harmed if this Court does not grant the TRO. Furthermore, the balance of equities

---

[1] The Court adopted the parties' proposed briefing schedule leading up to the hearing. ECF 23. In its Response to Plaintiff's TRO Motion, Defendant argued that the Norris LaGuardia Act's ("NLGA") anti-injunction provision, 29 U.S.C. § 101, divested this Court of jurisdiction to issue an injunction in this case unless it conformed with the NLGA's enumerated special requirements. ECF 35 at 25–30. This Court ordered the parties to provide briefing addressing whether the NLGA's anti-injunction provision applied to this case. ECF 40. On May 19, 2021, this Court issued an Order finding that the NLGA's anti-injunction provision does not apply to this case. ECF 45.

and the public interest strongly favor affording girls in the United States the same opportunities as boys. Therefore, for the reasons that follow, Plaintiff's Motion for Temporary Restraining Order, ECF 2, is GRANTED.

## STANDARDS

In deciding whether to grant a motion for a temporary restraining order, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Like a preliminary injunction, a temporary restraining order is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit applies a "sliding scale" approach in considering the factors outlined in *Winter*. A stronger showing of one element of the preliminary injunction test may offset a weaker showing of another. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Thus, "when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

Finally, the already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a "mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). "In plain terms, mandatory injunctions should not issue in

'doubtful cases.'" *Id.* (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011)).

## DISCUSSION

### A.  Form of Injunction

Defendant argues that Plaintiff seeks a mandatory injunction and thus this Court must apply the heightened standard described above. ECF 35 at 24–25. Plaintiff asserts that her requested relief can be properly categorized as prohibitory. ECF 41 at 12. Because this Court finds that Plaintiff has met her burden under either standard, it assumes without finding that Plaintiff seeks a mandatory injunction.

### B.  TRO Factors

#### 1.  The Law and the Facts Clearly Favor Plaintiff's Position

##### a.  The Sherman Act

Plaintiff alleges Defendant's Age Rule violates § 1 of the Sherman Act, 15 U.S.C. § 1. ECF 1 at ¶ 3. Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Section 1 "is intended to prohibit actions that unreasonably restrain competition." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1033 (9th Cir. 2005) (citing *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988)).

The "rule of reason" is the accepted standard for testing whether an alleged restraint on competition imposed by a sports league violates § 1 of the Sherman Act. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 202–03 (2010); *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 41 (2d Cir. 2018) ("Regulation of league sports is a textbook example of when the rule of reason applies."). To determine whether a restraint violates the rule of reason, courts apply a three-step, burden-shifting framework. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274,

2284 (2018). The plaintiff bears the initial burden to show that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market. *Id*. If the plaintiff carries this burden, it shifts to the defendant to show a procompetitive rationale for the restraint. *Id*. If the defendant makes that showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means. *Id*.

A plaintiff must establish three elements to meet its initial burden: "(1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce." *Jack Russell Terrier*, 407 F.3d at 1033. Each element is discussed in turn.

Defendant argues that Plaintiff cannot demonstrate the existence of a contract, combination, or conspiracy among two or more separate entities because "the NWSL is a single entity that employs the players and assigns their rights to teams via its draft and player dispersal process." ECF 35 at 34. Section 1 of the Sherman Act targets only "concerted action" between separate entities and does not apply to anticompetitive actions taken by a single entity acting unilaterally. *Am. Needle*, 560 U.S. at 190–91. The determination of whether targeted activity is "concerted action" between separate entities is a "functional consideration of how the parties involved in the alleged anticompetitive conduct actually operate." *Id*. at 191. The inquiry "does not turn simply on whether the parties involved are legally distinct entities." *Id*. ("[W]e have repeatedly found instances in which members of a legally single entity violated § 1 when the entity was controlled by a group of competitors and served, in essence, as a vehicle for ongoing concerted activity."). Instead, "the crucial question is whether the entities alleged to have

conspired maintain an 'economic unity,' and whether the entities were either actual or potential competitors." *Jack Russell Terrier*, 407 F.3d at 1034.

Courts have often rejected single entity defenses from sports leagues in § 1 cases. *See Am. Needle*, 560 U.S. at 201; *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984); *L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1388–89 (9th Cir. 1984) (collecting cases); *Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1099 (1st Cir. 1994); *McNeil v. Nat'l Football League*, 790 F. Supp. 871, 878–80 (D. Minn. 1992). In *Fraser v. Major League Soccer, LLC*, 284 F.3d 47, 56 (1st Cir. 2002), the district court found on summary judgment that Major League Soccer ("MLS") was a single entity because its owners were called "operator/investors" and the league had some aspects of a unified corporation and granted summary judgment for the MLS on that issue. *Id*. at 59–61. The First Circuit declined to affirm on the district court's finding that MLS was a single entity, calling it "doubtful." *Id*. at 58. In calling the single entity finding "doubtful," the court focused on the operator/investors' roles as individual team managers with "a diversity of entrepreneurial interests that go[] well beyond the ordinary [stockholder in a company]." *Id*. at 57–58.

Here, the information in the record suggests that, like many other professional sports leagues, the NWSL is not a single entity for the purposes of this § 1 analysis. Plaintiff asserts in an unchallenged declaration that each NWSL team has a separate owner who funds at least some aspects the team's operations. ECF 9 at ¶ 19. The teams compete directly against each other to build the best team, attract fans, and make money, including by selling sponsorships, advertising, and tickets. *Id*. Each team hires and pays its own staff and trains its own players. *Id*. The NWSL also has an "Allocation Money" mechanism that allows each team to spend its own funds to pay individual players on its roster significantly more money than would otherwise be permitted by

the NWSL's salary cap, or to pay acquisition/transfer fees for players the team wishes to acquire from non-NWSL teams and leagues. *Id*. Based on this limited record, this Court finds that the member teams of the NWSL are competitors in the market for players such that they are not a single entity for the purposes of this § 1 challenge alleging an anticompetitive restriction of that market.

Defendant asserts that because the NWSL was a single entity at the time the Age Rule was adopted in 2013, Plaintiff cannot show any agreement between two or more competitors to constitute concerted action. ECF 35 at 34–35. However, the relevant question is not whether the NWSL was a single entity when the Age Rule was created but whether the Age Rule has now been agreed upon and enforced by separate entities in an anticompetitive manner. Defendant contends that this case is similar to *Relevant Sports, LLC v. U.S. Soccer Federation, Inc.*, No. 19-cv-8359 (VEC), 2020 WL 4194962 (S.D.N.Y. July 20, 2020). In *Relevant Sports*, a sporting event promoter brought a § 1 claim against United States Soccer Federation alleging that it had entered into an agreement with the Fédération Internationale de Football Association ("FIFA") and other regional confederations and national associations to refuse to sanction soccer games in the United States and to boycott professional leagues, clubs, and players that participate in unsanctioned games. *Id.* at *1. The district court granted United States Soccer Federation's motion to dismiss the complaint because Plaintiff failed to plead facts demonstrating that it had entered into any such agreement with FIFA. *Id.* at *6–*7.

In contrast to *Relevant Sports*, Plaintiff here has pointed to evidence in the record which demonstrates that the Age Rule has been incorporated into an agreement made between the NWSL and its member teams. ECF 41 at 19. Documents filed under seal appear to show that the Age Rule is contained in the 2021 NWSL Competition Manual, and that member teams are

required to sign Rules of Compliance Affidavits at the beginning of each season certifying their compliance with the rules in the Manual. At this stage of the proceedings, this Court concludes that Plaintiff has shown sufficient evidence of an agreement to enforce the Age Rule between the NWSL and its member teams to constitute concerted action.

In sum, Plaintiff has established that the NWSL and its member teams are not a single entity under § 1 of the Sherman Act and that they formed an agreement to enforce the Age Rule. Thus, Plaintiff has satisfied the first step of its initial burden by showing "the existence of a contract, combination, or conspiracy among two or more separate entities." *See Jack Russell Terrier*, 407 F.3d at 1033.

Next, Plaintiff must establish that the Age Rule "unreasonably restrains trade." *Id.* Plaintiff can show that an agreement unreasonably restrains trade either directly or indirectly. *Ohio*, 138 S. Ct. at 2284. "Direct evidence of anticompetitive effects would be proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Id.* (internal quotation marks, citations and alterations omitted). "Indirect evidence would be proof of market power plus some evidence that the challenged restraint harms competition." *Id.*

To start, the NWSL has market power. The labor market of athletes can constitute a relevant market for antitrust purposes. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1058 (9th Cir 2015). The NWSL is the only professional women's soccer league in the United States, and it accordingly has no real competition in the labor market for women professional soccer players. ECF 9 at ¶ 16; *Denver Rockets v. All-Pro Mgmt., Inc.*, 325 F. Supp. 1049, 1053–54 (C.D. Cal. 1971) (finding that there were "no other leagues of professional basketball teams of comparable status" to the NBA and ABA—the then existing top-level

professional U.S. basketball leagues), *injunction reinstated by, Haywood v. Nat'l Basketball Ass'n*, 401 U.S. 1204 (1971).

In *Denver Rockets*, Spencer Haywood successfully challenged the NBA's rule prohibiting a prospective player from negotiating with any NBA team until four years after his high school class graduation. 325 F. Supp. at 1066–67. The district court in that case explained the harms stemming from rules like the "four years from high school" rule as follows:

> The harm resulting from a 'primary' boycott such as this is threefold. First, the victim of the boycott is injured by being excluded from the market he seeks to enter. Second, competition in the market in which the victim attempts to sell his services is injured. Third, by pooling their economic power, the individual members of the NBA have, in effect, established their own private government.

*Id*. at 1061. The District Court granted a preliminary injunction, and later a partial summary judgment in Haywood's favor. *Id.* at 1067. On appeal, the Ninth Circuit briefly stayed the injunction, but never ruled on the merits because on emergency petition to the Supreme Court, Justice Douglas reinstated the trial court injunction, permitting Haywood to play immediately. *Haywood*, 401 U.S. at 1206–07. In his opinion, Justice Douglas expressed that "[t]his group boycott issue in professional sports is a significant one" and found that the balance of equities favored Haywood. *Id.* at 1205–06.

Two other cases followed in hockey and football, with the same result. *Linseman v. World Hockey Ass'n*, 439 F. Supp. 1315 (D. Conn. 1977); *Boris v. U.S. Football League*, No. Cv. 83-4980 LEW (Kx), 1984 WL 894 (C.D. Cal. Feb. 28, 1984).

Here, the Age Rule unreasonably restrains competition in the same way that the "four years from high school" rule did in *Denver Rockets*. Plaintiff is injured by being excluded from the market, competition in the market is injured by the exclusion of otherwise qualified players, and the NWSL and its members have pooled their market power to "in effect, establish[] their

PAGE 10 – OPINION AND ORDER

own private government." *Denver Rockets*, 325 F. Supp. at 1061. Therefore, Plaintiff has satisfied the second step of its initial burden by showing the Age Rule "unreasonably restrains trade." *See Jack Russell Terrier*, 407 F.3d at 1033.

Finally, it is clear that the Age Rule "affects interstate commerce." *Id.* The NWSL has ten teams in ten states, and each team travels to each of those states regularly to play games. ECF 1 at ¶ 17. Many of those games are broadcast around the United States on TV, radio, and the internet pursuant to contracts entered into by the NWSL or its teams. Accordingly, this Court concludes that Plaintiff has made a sufficient showing of all three elements to satisfy its initial burden under the rule of reason.

Because Plaintiff has met her initial burden, it shifts to Defendant to show a procompetitive rationale for the Age Rule's restraint. *Ohio*, 138 S. Ct. at 2284. The antitrust laws are concerned with competition. Accordingly, "justifications offered under the rule of reason may be considered only to the extent that they tend to show that, on balance, the 'challenged restraint enhances competition.'" *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1010, 1021 (10th Cir. 1998) (quoting *Bd. of Regents*, 468 U.S. at 104). Procompetitive benefits are those that improve or broaden competitive choices and include increasing output, creating operating efficiencies, making a new product available, enhancing product or service quality, and widening consumer choice. *Id.* at 1023; *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1257 (9th Cir. 2020) (citing *O'Bannon*, 802 F.3d 1049, 1072 (9th Cir. 2015)); *Bd. of Regents*, 468 U.S. at 102 (expanding consumer choice is procompetitive). Cost-cutting, promoting social values, ethical values, public policy, or public safety are not considered procompetitive benefits. *Law*, 134 F.3d at 1022–23; *FTC v. Superior Trial Ct. Laws. Assn.*, 493 U.S. 411, 423–24 (1990); *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 462–64

(1986); *Bd. of Regents*, 468 U.S. at 117; *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695–96 (1978).

In a footnote, Defendant asserts that the Age Rule has "numerous benefits, including concerns for minor athletes' development, protecting a league from a minor's ability to avoid employment contracts, the myriad concerns for minor athletes embedded in the Safe Sport Act, and the League's costs to implement the same if it employs minors and allows them to travel throughout the United States for games." ECF 35 at 36–37 n.15. Further, Defendant argues that the benefits are "demonstrated by the fact that nearly every professional sports league in the U.S. chooses to require players to be at least the age of majority, if not older." *Id*. Defendant does not attempt to explain how its proffered benefits improve or broaden competitive choices in any way. Indeed, the list appears to be more directed at reducing Defendant's overhead costs than benefitting competition. *See Law*, 134 F.3d at 1022 ("[C]ost-cutting by itself is not a valid procompetitive justification."). In the absence of further evidence justifying the Age Rule as procompetitive, this Court concludes that Defendant has failed to meet its burden of demonstrating a procompetitive rationale for the Age Rule's restraint.

Given the information in the record at this time, this Court finds that Plaintiff has shown that the law and facts clearly favor her position that the NWSL's Age Rule violates § 1 of the Sherman Act.

### i.   The Non-statutory Labor Exemption

Defendant next argues that Plaintiff cannot show that the law and the facts clearly favor her position because the Age Rule falls under the non-statutory labor exemption to the antitrust laws. ECF 35 at 30–34. The Supreme Court has recognized "that a proper accommodation between the congressional policy favoring collective bargaining under the [National Labor Relations Act] and the congressional policy favoring free competition in business markets

requires that some union-employer agreements be accorded a limited nonstatutory exemption from antitrust sanctions." *Connell Const. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 622 (1975) (citing *Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676 (1965). "The Supreme Court has never delineated the precise boundaries of the [non-statutory labor] exemption, and what guidance it has given as to its application has come mostly in cases in which agreements between an employer and a labor union were alleged to have injured or eliminated a competitor in the employer's business or product market." *Cal. ex rel. Harris v. Safeway, Inc*., 651 F.3d 1118, 1125 (9th Cir. 2011) (quoting *Clarett v. Nat'l Football League*, 369 F.3d 124, 131 (2d Cir. 2004) (internal quotation marks omitted). The Court has explained that the purpose behind the exemption is to effectuate the intent of Congress of preventing "judicial use of antitrust law to resolve labor disputes." *Brown v. Pro Football, Inc.*, 518 U.S. 231, 236 (1996).

In the context of professional sports leagues, courts have consistently held that rules created through or incorporated by collective bargaining agreements between leagues and their respective players unions are immune from scrutiny under § 1 of the Sherman Act. *See Wood v. Nat'l Basketball Ass'n*, 809 F.2d 954, 963 (2d Cir. 1987); *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 474–75 (6th Cir. 2005); *Clarett v. Nat'l Football League*, 369 F.3d 124, 142–43 (2d Cir. 2004).

Defendant argues that by recognizing the NWSL PA as an exclusive bargaining agent and beginning the collective bargaining process, it has immunized the Age Rule from antitrust scrutiny, and that any injunction this Court could grant would interfere with the bargaining process. ECF 35 at 30–34. This position is unsupported by precedent and the facts of this case.

First, Defendant has not identified any cases where the non-statutory labor exemption applied to a regulation created before the recognition of a union, and which had not been subsequently included or implicitly incorporated into a collective bargaining agreement. There is no existing collective bargaining agreement between the NWSL and the NWSL PA, nor has there ever been. Extending the non-statutory exemption as Defendant suggests would mean that employers could fully insulate themselves from antitrust scrutiny by simply recognizing a union and commencing the (often years-long) collective bargaining process.

Second, despite Defendant's assertions to the contrary, nothing about the injunction Plaintiff seeks would interfere with the NWSL PA's ability to collectively bargain over the terms or conditions of employment with Defendant. The Age Rule Plaintiff challenges was created by Defendant years before the NWSL PA existed. It has not been incorporated into any collective bargaining agreement between Defendant and the NWSL PA because no collective bargaining agreement has yet been reached. As Plaintiff acknowledges in her Complaint, an injunction prohibiting Defendant from enforcing its current Age Rule against Plaintiff in no way prevents the NWSL PA and Defendant from including a new age rule into a collective bargaining agreement, at which point it could be lawfully enforced against Plaintiff. ECF 1 at 12. Thus, Plaintiff's requested relief does not interfere with the rights of the NWSL PA to negotiate rules governing the league with Defendant, including whether there should be an Age Rule. Rather, Plaintiff simply seeks an order preventing Defendant from enforcing a rule created outside of any collective bargaining agreement which bars her from seeking employment with the NWSL.

Defendant further argues that the non-statutory labor exemption applies to the Age Rule because it has signed a "Voluntary Recognition Agreement" with the NWSL PA in November 2018. ECF 35 at 33. However, the agreement provides that Defendant reserves the unilateral

right to change and establish rules concerning the drafting and trading of players. The agreement also reflects that it is not the result of collective bargaining negotiations, which had not yet begun in November 2018. The mere existence of this agreement does not insulate the Age Rule from § 1 scrutiny. Thus, this Court finds that the non-statutory labor exemption does not apply to this case.

### ii.  Damages

Finally, Defendant argues that Plaintiff cannot show that the merits clearly favor her position because her claimed injury is "entirely speculative." ECF 35 at 37–38. This Court disagrees.

In both her Complaint and during her testimony at the May 20, 2021 hearing, Plaintiff proffered sufficient indicia that she would be a sought-after player in the NWSL were it not for the Age Rule barring her eligibility. Plaintiff has an ongoing arrangement with the Portland Thorns, a member team of the NWSL, where she is treated like a team member in all ways other than signing a player contract and playing in official games. ECF 1 at ¶ 8. Plaintiff practices with the team, plays in unofficial "scrimmages" and pre-season games against other professional teams, and has her own locker in the Thorns' locker room. *Id*. At the hearing, Plaintiff testified that both the Thorns' General Manager and one of its coaches have told her that they would sign her if she were eligible. Plaintiff's testimony was not contradicted by Defendant.

Defendant asserts that because Plaintiff already missed this season's draft, "there is no mechanism in the League's rules and procedures that would result in her playing this season." ECF 35 at 38. This argument appears to be undermined by the 2021 NWSL Competition Manual, which outlines mechanisms outside the draft for players to enter the league mid-season. Therefore, this Court rejects Defendant's position that Plaintiff's alleged damages are entirely speculative and undermine her ability to succeed on the merits of her claim.

PAGE 15 – OPINION AND ORDER

Based on the record available at this stage of the proceeding, this Court finds that Plaintiff has met her burden of establishing that the law and the facts clearly favor her position.

### 2. Irreparable Harm

To obtain a TRO, Plaintiff must also "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. This Court finds that Plaintiff has made this showing.

Through declarations from U.S. National Women's Team players and collegiate soccer coaches, as well as her own testimony, Plaintiff has shown that she has the requisite skills and is ready to play professional soccer, that the Age Rule is impeding her development as a soccer player in an irreversible manner, that the career of a professional soccer player is short, and that there are no substitutes to actual professional competition to help her realize her full potential. ECF 3; ECF 4; ECF 5; ECF 6; ECF 8.

Becky Sauerbrunn, a professional soccer player on the Portland Thorns, described Plaintiff's injury as follows:

> Keeping [Plaintiff] out of League play can slow her development, delay her improvement, and more generally impede her career. Playing against top professional competition, when the opponents play their hardest and when your failures have consequences, is how you learn to be at your best. Practice and scrimmages are very helpful, but nothing is a full substitute for real competition.

ECF 3 at ¶ 7.

Plaintiff expressed a similar sentiment during her live testimony, where she explained that every coach she has ever worked with has believed that real competition is where players improve their skills the most. Plaintiff's injury is irreparable because the opportunities she will miss due to the Age rule cannot be regained. As put by Ms. Sauerbrunn, "A soccer player's career is finite. If [Plaintiff] spends two-and-a-half years (or some lesser period) barred from the

League, there is no way to recover that lost time and the valuable experience she could be gaining by competing against the best week-in and week-out." *Id*. at ¶ 9. Plaintiff's personal coach, Joseph Smith, agrees:

> In my opinion, holding O.M. back from professional game competition will block her from being stretched, challenged, and pushed onto the next level and will do an incredible amount of harm to her ability to compete at the top level. I am fearful she might actually go backwards from lack of opportunity.

ECF 5 at ¶ 13.

The harm inflicted by the Age Rule is particularly acute given that the Olympic Games will be held this summer, which will open up roster spots in the NWSL, thereby increasing the likelihood that Plaintiff will receive even more meaningful playing time if the Age Rule is lifted promptly. ECF 8 at ¶ 15.

Based on this record, Plaintiff has shown that she will suffer irreparable injury in the absence of an injunction. *See Denver Rockets*, 325 F. Supp. at 1057 (finding that the plaintiff's exclusion from playing professional basketball would cause him "irreparable injury in that a substantial part of his playing career will have been dissipated, his physical condition, skills and coordination will deteriorate from lack of highlevel [sic] competition, his public acceptance as a super star will diminish to the detriment of his career, his self-esteem and his pride will have been injured and a great injustice will be perpetrated on him").

### 3. The Balance of the Equities

The threat of irreparable injury to Plaintiff is not counterbalanced by any cognizable harm to Defendant from a temporary injunction. Defendant suggests that if minors are permitted to play in the NWSL, its expenses will skyrocket because it will need to develop guidelines to account for the presence of minors, to comply with all aspects of the Safe Sports Act, add hotel rooms and shower facilities for minors, and develop contracts specifically tailored for minors.

ECF 35 at 41. Defendant offers no estimate of these additional costs. Further, the record suggests that Plaintiff is already using the Thorns' locker room facilities and has traveled with the team to participate in preseason scrimmages.

Without further evidence of the hardships the injunction Plaintiff seeks would impose on the NWSL, this Court finds that the equities tip strongly in Plaintiff's favor.

### 4. The Public Interest

Finally, this Court finds that the public interest weighs in favor of granting the requested injunction. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (internal quotation marks and citation omitted).

Here, the public interest is served by issuing injunctive relief both because it preserves free and open competition and because it promotes gender equity. This Court notes that the NWSL's comparable men's league in the United States, MLS, has no age limit and employs players under 18. ECF 1 at ¶ 4. As of the date Plaintiff's Complaint was filed, more than half of MLS teams allegedly had one or more players on their roster under the age of 18. *Id*. In other words, the only thing currently standing between Plaintiff and her aspiration to be a professional soccer player in this country is her gender. Promoting gender equity in athletics is clearly in the public interest.

By satisfying all four of the elements outlined above, Plaintiff has met her burden of establishing that temporary injunctive relief is appropriate in this case. Accordingly, Plaintiff's Motion for Temporary Restraining Order, ECF 2, is GRANTED as follows:

### TEMPORARY RESTRAINING ORDER

1.  Defendant and its members, officers, agents, servants, employees, attorneys, teams, and all persons in active concert or participation with them are enjoined from enforcing the

Age Rule against Plaintiff, unless and until such Age Rule is contained in a fully effective collective bargaining agreement that would apply to her, as permitted by law.

2. This Order shall expire in fourteen (14) days after entry, unless otherwise extended by stipulation of the parties or by further order of the Court.

3. The parties shall confer and propose to the Court a schedule for briefing and hearing on whether the Court should issue a preliminary injunction.

**IT IS SO ORDERED**.

DATED this 24th day of May 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge