IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **O.M.**, by and through her parent and guardian, **K.C. MOULTRIE**,<br><br>                    Plaintiff,<br><br>        v.<br><br>**NATIONAL WOMEN'S SOCCER LEAGUE, LLC**,<br><br>                    Defendant. | Case No. 3:21-cv-00683-IM<br><br>**OPINION AND ORDER** |

Eric R. Mills, Joshua M. Sasaki, Bruce L. Campbell, Max Louis Forer, Erica A. Clausen, Miller Nash LLP, 111 SW Fifth Avenue, Suite 3400, Portland, OR 97204; Dennis Stewart, Michelle J. Looby, Mickey L. Stevens, Gustafson Gluek pLLC, 120 South 6th Street, Suite 2600, Minneapolis, MN 55402; Leonard B. Simon, Law Offices of Leonard B. Simon P.C., 655 West Broadway, Suite 1900, San Diego, CA 92101. Attorneys for Plaintiff.

Christopher S. Yates, Elizabeth H. Yandell, Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, CA 94111; David H. Angeli, Michelle Holman Kerin, Peter D. Hawkes, Angeli Law Group LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97204; Anna M. Rathbun, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, DC 20004; Lawrence E. Buterman, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020. Attorneys for Defendant.

**IMMERGUT, District Judge.**

        Before this Court is Plaintiff's Motion for Preliminary Injunction. ECF 2. Plaintiff, a 15-

year-old soccer player, seeks an order from this Court enjoining Defendant National Women's

Soccer League ("NWSL" or "the League") from enforcing against her its rule that all players in the League must be at least 18 years old (the "Age Rule"). This Court previously granted Plaintiff's request for a temporary restraining order ("TRO") prohibiting enforcement of the Age Rule pending this Court's ruling on the Motion for Preliminary Injunction. ECF 47; ECF 77.

The preliminary injunction sought by Plaintiff is limited in its scope. Plaintiff seeks an order prohibiting the League from preventing her from playing professional soccer on an NWSL team through its requirement that players be at least 18 years of age. ECF 1 at 12; ECF 2 at 31. As Plaintiff clarified during the hearing on the TRO, she does not seek an order requiring the NWSL or any of its member teams to hire her. Further, Plaintiff does not seek an order that interferes with negotiations between the NWSL and the NWSL Players Association ("NWSL PA"). Plaintiff concedes that if the NWSL and the NWSL PA enter into a collective bargaining agreement ("CBA") that includes an age restriction, she could lose her ability to play for the NWSL until she is age-eligible and would not have grounds to challenge such a restriction. ECF 1 at 12; ECF 50 at 17. Through this preliminary injunction, Plaintiff solely seeks the opportunity to compete for a position on a professional soccer team free from the Age Rule's restrictions.

On May 4, 2021, Plaintiff filed her complaint and a motion for a temporary restraining order and preliminary injunction. ECF 1; ECF 2. Plaintiff's complaint challenges the NWSL's Age Rule as a violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, and argues that "[t]he ten teams in the NWSL have agreed among themselves, and with the League, not to contract with soccer players under the age of 18, without regard to their talents or their ability to compete in the League." ECF 1 at ¶¶ 3, 40. Plaintiff further argues that the NWSL is the only option for women to play professional soccer in the United States, and that the Age Rule serves no legitimate business justification or procompetitive purpose. *Id.* at ¶¶ 41, 44. Plaintiff points to

the absence of any age restrictions for male soccer players to demonstrate that the public interest in open competition and the equal treatment of women favors an injunction in this case. *Id*. at ¶ 45. Plaintiff asserts that keeping her out of the NWSL, which has already started its season of games, "will continually slow her development, delay her improvement, and more generally impede her career as a soccer player." *Id*. at ¶ 35.

On May 20, 2021, this Court held a hearing on Plaintiff's TRO motion at which both sides had an opportunity to present additional evidence and argument.[1] ECF 46. On May 24, 2021, this Court granted Plaintiff's TRO motion, finding that Plaintiff had presented facts and legal support sufficient to warrant a TRO enjoining the enforcement of the Age Rule against her until a preliminary injunction hearing could be held. ECF 47. After this Court entered the TRO against Defendant, five of the NWSL's ten teams submitted discovery requests for Plaintiff's rights. ECF 80, Levine Decl., at ¶ 3.[2]

---

[1] The Court adopted the parties' proposed briefing schedule leading up to the TRO hearing. ECF 23. In its Response to Plaintiff's TRO Motion, Defendant argued that the Norris LaGuardia Act's ("NLGA") anti-injunction provision, 29 U.S.C. § 101, divested this Court of jurisdiction to issue an injunction in this case unless it conformed with the NLGA's enumerated special requirements. ECF 35 at 25–30. This Court ordered the parties to provide briefing addressing whether the NLGA's anti-injunction provision applied to this case. ECF 40. On May 19, 2021, this Court issued an order finding that the NLGA's anti-injunction provision does not apply to this case. ECF 45.

[2] In her supplemental memorandum in support of the preliminary injunction motion, Plaintiff alleges that Defendant has violated the spirit of the Court's TRO by adopting new "age-related barriers" to delay Plaintiff's entry into the League. ECF 50 at 12–17. Plaintiff therefore requests that this Court enter a preliminary injunction that not only enjoins Defendant from enforcing the Age Rule but also (1) prohibits Defendant "from implementing any new measure, policy, or rule that has the effect of delaying or impeding the processing and approval of the Thorns' discovery request for [Plaintiff]; (2) prohibits [Defendant] from revoking or interfering with [Plaintiff's] status as a contracted player unless and until the League enters into a final CBA that includes an Age Rule which [Plaintiff] does not meet, and (3) expressly retains jurisdiction to monitor [Defendant's] compliance with the preliminary injunction and to award appropriate relief for any noncompliance." *Id*. at 17. Defendant denies that it has violated the spirit of the TRO and insists that it "is making all reasonable efforts to accommodate [Plaintiff's] desire to

PAGE 3 – OPINION AND ORDER

After this Court issued the TRO, the parties submitted supplemental briefing addressing whether the Court should issue a preliminary injunction. Plaintiff submitted briefing and multiple declarations containing NWSL governing documents and agreements which she obtained through discovery. ECF 50; ECF 54; ECF 55; ECF 67; ECF 68; ECF 69.  Defendant submitted briefing and a declaration from the NWSL's general counsel containing League documents and outlining Defendant's efforts to comply with the TRO. ECF 62; ECF 63.

On June 7, 2021, this Court held a hearing on Plaintiff's preliminary injunction motion. ECF 77. The parties again had the opportunity to present additional evidence and argument. The Court heard testimony from Plaintiff which it found credible. Defendant presented no new evidence at the preliminary injunction hearing.

The analysis courts apply to assess whether a preliminary injunction should be granted is "substantially identical" to the analysis used to assess whether to grant a TRO. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). As explained further below, the evidence presented since this Court granted the TRO does not alter its conclusion that the NWSL and its ten teams have agreed to impose the NWSL's age restriction which excludes female competitors from the only available professional soccer opportunity in the United States because they are under 18, regardless of talent, maturity, strength, and ability.

---

join a team as expeditiously as possible." ECF 62 at 29. This afternoon, Plaintiff filed supplemental briefing and a declaration from counsel alleging further misconduct by Defendant and seeking intervention from this Court. ECF 85; ECF 86. Defendant has not yet had an opportunity to respond. Whether Defendant has violated the spirit of the TRO is an issue distinct from whether this Court should grant Plaintiff's request for a preliminary injunction. Accordingly, the Court considers only whether Plaintiff has met her burden of establishing that the preliminary injunction she sought in her complaint and the initial motion, ECF 2, is warranted at this time. Once Defendant has been afforded the opportunity to respond to Plaintiff's latest allegations, this Court will decide whether further action is required to ensure Defendant's compliance with its orders.

Indeed, the new evidence in the record bolsters this Court's prior conclusion that the NWSL and its member teams are not a single entity under the Sherman Act. Rather, the teams function as separate economic entities competing for player rights. The NWSL's governing documents also support the Court's prior conclusion that the NWSL and its member teams formed an agreement to enforce the Age Rule, and that the member teams play a central role in its continued implementation.

This Court again finds that Defendant has not presented any compelling procompetitive reasons to justify its anticompetitive policy, nor has it shown that eliminating the Age Rule will cause any concrete injury to the NWSL. Instead, Defendant repeats its previously rejected procompetitive justifications for the Age Rule, which strain credulity.

Accordingly, this Court adopts its reasoning and conclusions from the TRO opinion, ECF 47, and supplements its findings as explained below. This Court again finds that the merits clearly favor Plaintiff's position, that she will be irreparably harmed if it does not grant the preliminary injunction, and that the balance of equities and the public interest strongly favor affording girls in the United States the same opportunities as boys. Plaintiff's Motion for Preliminary Injunction, ECF 2, is GRANTED.[3]

## STANDARDS

A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary

---

[3] In granting the preliminary injunction motion, this Court is not making a final ruling on the merits of this case. The preliminary injunction will remain in place until there is a trial on the merits, which this Court is willing to oversee on an expedited schedule.

injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

The Ninth Circuit applies a "sliding scale" approach in considering the factors outlined in *Winter*. A stronger showing of one element of the preliminary injunction test may offset a weaker showing of another. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Thus, when the balance of hardships "tips sharply towards the plaintiff," the plaintiff need demonstrate only "serious questions going to the merits." *Id.* at 1135 (internal quotation marks omitted).

Finally, the already high standard for granting a preliminary injunction is further heightened when the type of injunction sought is a "mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). "In plain terms, mandatory injunctions should not issue in 'doubtful cases.'" *Id.* (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011)).

## DISCUSSION

### A. Form of Injunction

Defendant argues that Plaintiff seeks a mandatory injunction and thus this Court must apply the heightened standard described above. ECF 35 at 24–25. Plaintiff asserts that her requested relief can be properly categorized as prohibitory. ECF 41 at 12. At the TRO stage, this Court found that Plaintiff met her burden under either standard and assumed without finding that Plaintiff sought a mandatory injunction. ECF 47 at 5. This Court again finds that Plaintiff has met her burden under either the mandatory or prohibitory injunction standard, and therefore assumes without deciding that Plaintiff requests a mandatory injunction.

### B. Preliminary Injunction Factors

#### 1. The Law and the Facts Clearly Favor Plaintiff's Position

Plaintiff alleges Defendant's Age Rule violates § 1 of the Sherman Act, 15 U.S.C. § 1.

ECF 1 at ¶ 3. Section 1 prohibits any "contract, combination in the form of trust or otherwise, or

conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. It "is intended to prohibit actions

that unreasonably restrain competition." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel*

*Club, Inc*., 407 F.3d 1027, 1033 (9th Cir. 2005) (citing *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,

485 U.S. 717, 723 (1988)).

##### a. Rule of Reason Analysis

In its TRO, this Court analyzed the Age Rule under the "rule of reason," which is the

accepted standard for testing whether an alleged restraint on competition imposed by a sports

league violates § 1 of the Sherman Act. ECF 47 at 5–12; *see also Am. Needle, Inc. v. Nat'l*

*Football League*, 560 U.S. 183, 202–03 (2010); *N. Am. Soccer League, LLC v. U.S. Soccer*

*Fed'n, Inc.*, 883 F.3d 32, 41 (2d Cir. 2018) ("Regulation of league sports is a textbook example

of when the rule of reason applies.").

To determine whether a restraint violates the rule of reason, courts apply a three-step,

burden-shifting framework. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). The plaintiff

bears the initial burden to show that the challenged restraint has a substantial anticompetitive

effect that harms consumers in the relevant market. *Id*. If the plaintiff carries this burden, then

the burden shifts to the defendant to show a procompetitive rationale for the restraint. *Id*. If the

defendant makes that showing, then the burden shifts back to the plaintiff to demonstrate that the

procompetitive efficiencies could be reasonably achieved through less anticompetitive means. *Id*.

i. **Anticompetitive Effect**

A plaintiff must establish three elements to meet its initial burden: "(1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce." *Jack Russell Terrier*, 407 F.3d at 1033.

At the TRO stage, this Court found that Plaintiff met her initial burden. ECF 47 at 6–11. In so finding, the Court rejected Defendant's arguments that the NWSL and its member teams are a single entity incapable of conspiring under § 1 of the Sherman Act and that Plaintiff had not shown evidence of "concerted action" between separate entities sufficient to establish a conspiracy. *Id.*

In her supplemental briefing on the preliminary injunction motion, Plaintiff provides additional evidence further supporting the Court's conclusion that the NWSL and its member teams are not a single entity for the purposes of a § 1 claim. ECF 50 at 4–7. Specifically, Defendant points to provisions of the Operating Agreement attached to the NWSL's LLC Agreement which demonstrate ways in which the NWSL and its member teams function as separate economic entities competing for player rights:

- Each Team Operator is required to deposit a "Collateral Deposit" amount in cash into a Collateral Account, in order to ensure each and every team operator meets its financial obligations. ECF 55 at 169–70.
- Each Team Operator has the exclusive right to operate a team in its Home Territory. *Id.* at 168.
- Each Team Operator's accounting and operational records, annual budget, and business and marketing plan are kept confidential from other Team Operators and parties. *Id.* at 168–69.
- Each Team Operator is authorized to (i) license Local Broadcast Rights and sell Local Commercial Affiliations, (ii) sell tickets to home games, (iii) market and sell NWSL-sponsored, local promotional programs, (iv) sell and collect revenues generated by stadium concessions, parking, and other revenue-providing sources under the Stadium Lease, (v) sell team-branded merchandise in the Home

Territory or via team website, and (vi) manage, promote, and sell and take other actions in connection with team-branded soccer camps, clinics, training, and academy and local soccer club affiliations. *Id*. at 170.

- Each Team Operator is also authorized to negotiate agreements with players, conduct all local marketing within the Home Territory, and take other such actions on behalf of NWSL as NWSL shall expressly authorize. *Id*.

- Each Team Operator hires its own general manager or executive in charge of soccer operations for the Team, head coach and assistant coaches, and local office staff and other personnel to carry out its obligations under the form Operating Agreement. *Id*. at 171.

- Each Team Operator selects players for the team from NWSL's pool of eligible players pursuant to the rules and procedures established by the NWSL. *Id*. at 171.

- The Team Operator is entitled to, upon the prior written consent of the NWSL, trade players to other NWSL teams pursuant to rules and procedures established by NWSL. *Id*.

- Each Team Operator must carry its own insurance. *Id*.

- Each Team Operator executes its own Stadium Lease and pays all rent, expenses, and any other fees, penalties, and interest under the lease. *Id*. at 172.

- The Team Operator is required to provide uniforms and certain types of equipment. *Id*. at 173.

- Each Team Operator is required to pay all travel expenses associated with players and team staff. *Id*. at 175-76.

- Each Team Operator is required to pay for players' per-diem expenses and any ticket deductions. *Id*.

This additional evidence bolsters this Court's prior finding that the NWSL and its member teams are not a single entity under § 1 of the Sherman Act despite the League's legal classification as one LLC.

In its response brief addressing the instant motion, Defendant again argues that the Age Rule does not constitute concerted action between the NWSL and its member teams because the NWSL unilaterally created the rule before any member teams existed and the member teams merely accepted the Age Rule. ECF 62 at 10–15. Defendant relies on *Toscano v. Prof'l Golfers' Ass'n*, 258 F.3d 978 (9th Cir. 2001). In *Toscano*, the Ninth Circuit found that no concerted action had been shown between the PGA Tour and "local sponsors" who organized the tournament events because the local sponsors "merely accepted the PGA Tour's rules and regulations and

played no role in creating or enforcing them." *Toscano*, 258 F.3d at 983. Unlike *Toscano*, the member teams here play a central role in enforcing the Age Rule. No athlete can play in the League unless one of the member teams chooses her through one of the League's player allocation methods. Further, while there was no evidence in *Toscano* that the "sponsors [had] an economic interest in the eligibility and participation rules challenged," the member teams here are direct competitors in the market for players that the Age Rule restricts. *Toscano v. PGA Tour, Inc.,* 70 F. Supp. 2d 1109, 1117 n. 10 (E.D. Cal. 1999), *aff'd sub nom. Toscano v. Professional Golfers Ass'n,* 258 F.3d 978 (9th Cir. 2001).[4]

The member teams' agreement to enforce the Age Rule is evidenced by the fact that they each must annually reaffirm in Rules Compliance Affidavits that they are not aware of any violation of "NWSL rules related to . . . any aspect of the NWSL competition." ECF 63-1 at 2. Further, each member team has also signed the NWSL Team Operating Agreement. ECF 67 at 4. The Operating Agreement states that the members' operation of a team in the League is "[s]ubject to the provisions of this Agreement and the Operating Rules" and that the member teams "shall (i) abide by the Operating Rules; [and] (ii) enforce all Operating Rules concerning the designation and conduct of the Team Staff and Players assigned to the Team." ECF 55 at 963, 966. "Operating Rules" are defined as "such procedures, policies, standards, requirements, guidelines and rules of general application to all NWSL team operators as may be duly adopted or modified by NWSL and expressed to the team operators and in effect from time to time." *Id.*

---

[4] Defendant also argues that *Jack Russell Terrier* is "instructive." ECF 62 at 13-14. However, that case held that a national breed club and registry and its regional affiliates were incapable of conspiring because, among other things, the JRTCA and its regional affiliates were not alleged to be actual or even potential competitors in the relevant market. *Jack Russell Terrier*, 407 F.3d at 1035–36. Here, the member teams of the NWSL compete directly with each other for players' services.

at 986. Both the Rules Compliance Affidavits and the Operating Agreement constitute

affirmative agreements by the member teams to abide by and enforce the NWSL's rules,

including its Age Rule.

Finally, although Defendant argues that Plaintiff "has not made any showing that the

NWSL or its members took any action on the Age Rule after its LLC agreement was amended to

join its member-operators," ECF 62 at 15, the record shows that the NWSL and its member

teams have enforced the Age Rule by prohibiting otherwise eligible players from playing in the

League until they turned 18, even when they already had a signed contract,[5] ECF 52 at ¶¶ 9–10.

Moreover, the fact that five of the NWSL's ten teams submitted discovery requests for Plaintiff's

rights after this Court enjoined enforcement of the Age Rule further demonstrates that the teams

had previously been enforcing its restriction. ECF 80 at ¶ 3.

In sum, Plaintiff has established concerted action between the NWSL and its member

teams to enforce the Age Rule, restricting the market for players in which the member teams

compete. Thus, this Court again finds that Plaintiff has satisfied the first step of her initial burden

by showing "the existence of a contract, combination, or conspiracy among two or more separate

entities." *See Jack Russell Terrier*, 407 F.3d at 1033.

Next, Defendant repeats its argument that Plaintiff cannot satisfy the second step of her

initial burden because she has not established that the Age Rule "unreasonably restrains trade."

ECF 62 at 15; *see also Jack Russell Terrier*, 407 F.3d at 1033. A plaintiff can show that an

agreement unreasonably restrains trade either directly or indirectly. *Ohio*, 138 S. Ct. at 2284.

"Direct evidence of anticompetitive effects would be proof of actual detrimental effects on

---

[5] The NWSL discovery rule permits a player to be discovered at 17, but she cannot play until she is 18. ECF 52 at ¶ 10.

competition, such as reduced output, increased prices, or decreased quality in the relevant

market." *Id*. (internal quotation marks, citations and alterations omitted). "Indirect evidence

would be proof of market power plus some evidence that the challenged restraint harms

competition." *Id*. (citations omitted).

In its TRO, this Court found that as the only professional women's soccer league in the

United States, the NWSL clearly has market power in the labor market for women professional

soccer players. ECF 47 at 9. The Court then found that the Age Rule unreasonably harmed

competition in the same way the NBA's "four years from high school" rule did in *Denver*

*Rockets v. All-Pro Mgmt., Inc.*, 325 F. Supp. 1049 (C.D. Cal. 1971) *injunction reinstated by*

*Haywood v. Nat'l Basketball Ass'n*, 401 U.S. 1204 (1971). ECF 47 at 10–11.

Defendant now points to *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers*

*Hockey Club*, 325 F.3d 712 (6th Cir. 2003), to argue that Plaintiff has shown that the Age Rule

causes harm only to her personally rather than to competition in the market.[6] ECF 62 at 15–17.

Defendant's argument is based on a flawed reading of *Plymouth Whalers*. While Defendant

suggests that the *Plymouth Whalers* court's determination that there was no harm to competition

stemmed from the fact that the plaintiff alleged injury only to himself, the court actually found

---

[6] At the preliminary injunction hearing, counsel for Defendant for the first time argued that this Court could not find that the Age Rule unreasonably restrained trade absent expert testimony from a PhD economist. When asked for authority to support this position, counsel pointed the Court to *United States v. Am. Express Co.*, 838 F.3d 179 (2d Cir. 2016) and *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008). To start, counsel should not be raising unbriefed arguments for the first time at oral argument. Regardless, the cited cases do not support counsel's position. Neither *Am. Express Co.* nor *Salvino* stand for the proposition that testimony from economists is always required to prove an unreasonable restraint on a relevant market. The relevant market here, the competition for services of professional women soccer players, is controlled by a monopsony, the NWSL. It does not require a PhD in economics to see how an anticompetitive rule promulgated by a monopsony controlling an entire market has market-wide impact.

that the plaintiff failed to define a relevant market and prove that market was being injured by the challenged policy. *Plymouth Whalers*, 325 F.3d at 719–20. The plaintiff there had defined the relevant market as competition among teams in two minor hockey leagues—the Ontario Hockey League (OHL) and Canadian Hockey League (CHL)—for player services. *Id.* at 714-15, 720. The Sixth Circuit held that the plaintiff alleged insufficient injury to economic competition because the OHL, as an amateur league, limited the amount a player could be paid to schooling expenses and a limited stipend. *Id.* at 715, 720. Accordingly, "the market for player services in the OHL [wa]s not a market that involve[d] economic competition." *Id.* at 720. Additionally, the plaintiff's allegations focused on competition between leagues, rather than amongst teams in a league. Because the OHL and CHL were but two of many hockey leagues, the restriction on competition was minimal.

In contrast to *Plymouth Whalers*, the relevant market here for the services of professional women soccer players involves economic competition. As Plaintiff alleges in her complaint and notes in her briefing, the NWSL's member teams can use Allocation Money to attract and retain players by paying them more than would otherwise be permitted. ECF 1 at ¶ 29; ECF 65 at 11–12. The teams also compete with each other for players' rights through league mechanisms like the NWSL Draft, the discovery process, and the ability to trade players. ECF 1 at ¶ 29; ECF 65 at 11–12. Rather than alleging an impact on amateur athletic competition, Plaintiff alleges that the Age Rule adversely impacts economic competition among the ten professional teams of the NWSL, who all pay and compete economically for the services of prospective professional soccer players. ECF 1 at ¶¶ 29-30, 40-44; *see also Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 474 (6th Cir. 2005) (distinguishing between arguments regarding non-economic harm to "quality" of athletic competition and limitations

placed on the competition for "players' services" which make that economic market "less competitive").

Defendant also argues that Plaintiff has not shown that the Age Rule impacts competition in the market. ECF 62 at 17. This argument is undermined by the fact that half of the teams in the NWSL put in discovery requests for Plaintiff's rights within days of this Court enjoining the enforcement of the Age Rule. Once the teams were no longer allowed to enforce their anticompetitive agreement, they immediately sought to compete for Plaintiff's services. Accordingly, this Court again finds that Plaintiff has satisfied the second step of her initial burden by showing that the Age Rule unreasonably restrains trade.

Defendant does not contest the Court's prior determination that Plaintiff satisfied the third step of her initial burden by showing that the Age Rule "affects interstate commerce." ECF 47 at 11. Thus, this Court concludes that Plaintiff has made a sufficient showing of all three elements to satisfy her initial burden under the rule of reason.

### ii. Procompetitive Rationales

Because Plaintiff has met her initial burden, the burden shifts to Defendant to show a procompetitive rationale for the Age Rule's restraint. *Ohio*, 138 S. Ct. at 2284. The antitrust laws are concerned with competition. Accordingly, "[j]ustifications offered under the rule of reason may be considered only to the extent that they tend to show that, on balance, 'the challenged restraint enhances competition.'" *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1010, 1021 (10th Cir. 1998) (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984)). Procompetitive benefits are those that improve or broaden competitive choices and include increasing output, creating operating efficiencies, making a new product available, enhancing product or service quality, and widening consumer choice. *Id.* at 1023; *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d

PAGE 14 – OPINION AND ORDER

1239, 1257 (9th Cir. 2020) (citing *O'Bannon v. Nat'l Collegiate Athletic Ass'n ("O'Bannon II")*,

802 F.3d 1049, 1072 (9th Cir. 2015)); *Bd. of Regents*, 468 U.S. at 102 (expanding consumer

choice is procompetitive). Cost-cutting, promoting social or ethical values, public policy, and

public safety are not considered procompetitive benefits. *Law*, 134 F.3d at 1022–23; *F.T.C. v.*

*Superior Ct. Trial. Laws. Assn.*, 493 U.S. 411, 423–24 (1990); *F.T.C. v. Ind. Fed'n of Dentists*,

476 U.S. 447, 462–64 (1986); *Bd. of Regents*, 468 U.S. at 117; *Nat'l Soc'y of Prof'l Eng'rs v.*

*United States*, 435 U.S. 679, 695–96 (1978).

    At the TRO stage, this Court found that Defendant failed to show a procompetitive

rationale for the Age Rule's restraint on the market. ECF 47 at 11–12. Defendant had offered

justifications for the Age Rule which focused on cost reduction without explaining how its

proffered rationales improve or broaden competitive choices in any way. *Id*. In its preliminary

injunction briefing supported by a new declaration from the NWSL's general counsel, Defendant

again focuses on cost-cutting as the rationale behind the Age Rule. ECF 62 at 17–20; ECF 63 at

¶ 8. Defendant argues that by limiting employment to players who have reached the legal age of

majority, the NWSL avoids expending the "significant time and resources" that would be

required to comply with laws aimed at protection of minors. ECF 62 at 18.

    Defendant claims that the Age Rule is designed to create "operating efficiencies" but fails

to demonstrate how the rule increases efficiency. *Id*. Defendant does not attempt to quantify the

costs of having a minor on a team nor identify whether such costs would be borne by the NWSL

or the team that decides to hire the minor. Instead, Defendant speculates that allowing minors to

play "could further increase administrative costs" which "could lead to reduced output." ECF 63

at ¶ 8. This Court finds that Defendant's justifications for the Age Rule are not only speculative,

but they also do not show that the Age Rule enhances competition. Accordingly, this Court

concludes that Defendant has failed to meet its burden of demonstrating a procompetitive rationale for the Age Rule and Plaintiff has shown that the law and facts clearly favor her position that it violates § 1 of the Sherman Act.

### b.  The Non-statutory Labor Exemption

Defendant also repeats its previously rejected argument that the Age Rule falls under the non-statutory labor exemption to the antitrust laws. ECF 62 at 22–26. The Supreme Court has recognized "that a proper accommodation between the congressional policy favoring collective bargaining under the [National Labor Relations Act] and the congressional policy favoring free competition in business markets requires that some union-employer agreements be accorded a limited nonstatutory exemption from antitrust sanctions." *Connell Const. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 622 (1975) (citing *Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676 (1965)). The Court has explained that the purpose behind the exemption is to effectuate the intent of Congress to prevent "judicial use of antitrust law to resolve labor disputes." *Brown v. Pro Football, Inc.*, 518 U.S. 231, 236 (1996).

In the context of professional sports leagues, courts have consistently held that rules created through or incorporated by collective bargaining agreements between leagues and their respective players unions are immune from scrutiny under § 1 of the Sherman Act. *See Wood v. Nat'l Basketball Ass'n*, 809 F.2d 954, 963 (2d Cir. 1987); *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 474–75 (6th Cir. 2005); *Clarett v. Nat'l Football League*, 369 F.3d 124, 142–43 (2d Cir. 2004). The NWSL and the NWSL PA have never entered into a collective bargaining agreement.

In its TRO, this Court rejected Defendant's argument that the Age Rule became immunized from antitrust scrutiny once Defendant recognized the NWSL PA as an exclusive bargaining agent and began the collective bargaining process. ECF 47 at 12–15. First, the Court

found that Defendant had not identified a single case where the non-statutory labor exemption applied to a regulation created before the recognition of a union, and which had not been subsequently included or implicitly incorporated into a collective bargaining agreement. *Id*. This Court reasoned that extending the non-statutory exemption as Defendant urged would mean that employers could fully insulate themselves from antitrust scrutiny by simply recognizing a union and commencing the (often years-long) collective bargaining process. *Id.* Second, this Court found that nothing about the injunction Plaintiff seeks would interfere with the NWSL PA's ability to collectively bargain over the terms or conditions of employment with Defendant. *Id*. Plaintiff acknowledges in her complaint that an injunction prohibiting Defendant from enforcing its current Age Rule against Plaintiff in no way prevents the NWSL PA and Defendant from including a new age rule into a collective bargaining agreement, at which point it could be lawfully enforced against Plaintiff. *See* ECF 1 at ¶ 3, 12–13 (requesting injunctive relief preventing Age Rule enforcement "unless and until such Age Rule is contained in a fully effective collective bargaining agreement that would apply to her, as permitted by law").

At the preliminary injunction hearing, this Court asked Defendant's counsel for his best case supporting the notion that the non-statutory labor exemption can apply to a regulation created before the recognition of a union which had not been subsequently included or implicitly incorporated into a collective bargaining agreement. Counsel referred the Court to *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996) and *Zimmerman v. Nat'l Football League*, 632 F. Supp. 398 (D.D.C. 1986). Neither case helps Defendant. Both *Zimmerman* and *Brown* were cases where a collective bargaining agreement had previously been reached between the relevant employers and unions. Further, *Brown* stands for the proposition that "to give effect to federal labor laws and policies and to allow meaningful collective bargaining to take place, some restraints on

competition imposed *through the bargaining process* must be shielded from antitrust sanctions." 518 U.S. at 237 (emphasis added). There, after the expiration of a collective bargaining agreement between football club owners and a players' union, the parties bargained for a new agreement until they reached impasse. *Id*. at 234–35. The owners then agreed among themselves, but not with the union, to implement the terms of their own last best bargaining offer. *Id*. The Supreme Court found that the non-statutory exemption applied because "impasse and an accompanying implementation of proposals constitute an integral part of the bargaining process," and therefore the challenged policy that the owners implemented "grew out of, and was directly related to, the lawful operation of the bargaining process." *Id*. at 239, 250.

Unlike *Brown*, where the challenged policy was imposed during the collective bargaining process itself via a recognized labor negotiation tactic, the Age Rule was created years before the NWSL's recognition of the NWSL PA and the commencement of collective bargaining. As Plaintiff recognizes, her requested relief may be displaced by any contrary collective bargaining agreement term. ECF 1 at 12. Thus, this Court enjoining the Age Rule's enforcement does not interfere with the NWSL and the NWSL PA's ability to meaningfully collectively bargain. *See id*. at 250 ("Our holding is not intended to insulate from antitrust review every joint imposition of terms by employers, for an agreement among employers could be sufficiently distant in time and in circumstances from the collective-bargaining process that a rule permitting antitrust intervention would not significantly interfere with that process.").

Similarly, in *Zimmerman*, the court held that the non-statutory exemption applied to shield a supplemental draft mechanism from antitrust scrutiny where the NFL and the NFLPA specifically negotiated and agreed to the terms of the draft itself. 632 F. Supp. at 406. Here, it is

undisputed that the neither the Age Rule nor any of the NWSL's current rules have been negotiated with and agreed to by the NWSL PA. Thus, Defendant's cases are inapposite.

Defendant also repeats its previously rejected argument that the "Voluntary Recognition Agreement" ("VRA") between the NWSL and the NWSL PA places the Age Rule beyond antitrust scrutiny. ECF 62 at 23–25; *see also* ECF 38-3 at 1-3. As noted in the TRO, that agreement reflects that it is not the result of collective bargaining negotiations, which had not yet begun in November 2018. The mere existence of an agreement outlining the process through which collective bargaining might begin in the future does not insulate the Age Rule from § 1 scrutiny.

Defendant insists that the VRA implicates the non-statutory exemption because under its terms and the National Labor Relations Act ("NLRA"), it may no longer make any unilateral changes to the League's status quo with respect to terms and conditions of employment without negotiating with the NWSL PA. ECF 62 at 24–25. Defendant has provided no evidence or legal authority demonstrating that the Age Rule is a term or condition of employment which must be negotiated under the VRA or the NLRA before it can make unilateral changes. First, this Court doubts whether the Age Rule is a term or condition of employment subject to any obligation to bargain that the NLRA imposes on Defendant. *See, e.g., Star Trib.*, 295 NLRB 543, 546 (1989) (pre-employment requirements imposed by management on non-employee applicants are "not encompassed within the statutory duty to bargain about terms and conditions of employment of the employer's employees in an appropriate unit"). Second, the plain language in the VRA does not impose any obligations on Defendant before making unilateral changes to the NWSL's rules. The VRA provides that during the pre-bargaining period, the NWSL reserves the unilateral right to make changes to the terms and conditions of employment. ECF 38-3 at 3 (requiring the

League to give "notice of any unilateral material changes" to terms and consider input but stating that "NWSL's ability to implement such changes" will not be delayed or limited). After the expiration of the pre-bargaining period, the VRA provides that Defendant's ability to make changes to the terms and conditions of employment is limited solely by any relevant provisions of the NLRA. *Id*. Defendant does not identify any NLRA provisions which would prevent it from making changes to the Age Rule. Finally, Defendant has cited no cases finding that a voluntary recognition agreement between an employer and a union on its own brings all of the employer's preexisting rules under the umbrella of the non-statutory labor exemption.

Thus, this Court again finds that the non-statutory labor exemption does not apply to this case.

### 2. Irreparable Harm

To obtain a preliminary injunction, Plaintiff must also "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). In its TRO, this Court found that Plaintiff had shown that she has the requisite skills and is ready to play professional soccer, that the Age Rule is impeding her development as a soccer player in an irreversible manner, that the career of a professional soccer player is short, and that there are no substitutes to actual professional competition to help her realize her full potential. ECF 47 at 16–17.

Defendant challenges the Court's irreparable harm finding by arguing that because no player on the U.S. Women's National Team ever played in the NWSL as a minor, "there is no evidence that employment with the NWSL before the age of 18 is necessary for a soccer player to excel in the sport or to compete on a national team." ECF 62 at 20–21. This argument misses the mark. Plaintiff does not contend that playing in the NWSL as a minor is necessary to achieve her goal of playing on the National Team. Rather, she asserts that the Age Rule interferes with

that goal by requiring her to wait several years before she can play professional soccer. Defendant's argument that Plaintiff is not harmed by the barrier it creates because the women who came before her were also subjected to the barrier is nonsensical.

Thus, this Court again finds that Plaintiff has shown that she will suffer irreparable injury in the absence of an injunction.

### 3.   The Balance of the Equities and the Public Interest

In its TRO, this Court found that the threat of irreparable injury to Plaintiff was not counterbalanced by any cognizable harm to Defendant from a temporary injunction, and that the public interest weighed in favor of granting the requested injunction. ECF 47 at 17–18. Specifically, the Court found that Defendant provided insufficient evidence of the hardships it would allegedly suffer in the face of an injunction, and that enjoining the Age Rule serves the public interest because it both preserves free and open competition and promotes gender equity. *Id.* The Court noted that the NWSL's comparable men's league in the United States, MLS, has no age limit and employs players under 18. ECF 47 at 18 (citing ECF 1 at ¶ 4). As of the date Plaintiff's Complaint was filed, more than half of MLS teams allegedly had one or more players on their roster under the age of 18. ECF 1 at ¶ 4. In other words, the only thing currently standing between Plaintiff and her aspiration to be a professional soccer player in this country is her gender.

Defendant did not challenge this Court's findings on the balance of the equities or the public interest. Accordingly, this Court finds Plaintiff has satisfied these elements of the preliminary injunction analysis.

By satisfying all four of the elements outlined above, Plaintiff has met her burden of establishing that a preliminary injunction is appropriate in this case until a trial on the merits can

be held. Accordingly, Plaintiff's Motion for Preliminary Injunction, ECF 2, is GRANTED as follows:

## PRELIMINARY INJUNCTION

1.  Defendant and its members, officers, agents, servants, employees, attorneys, teams, and all persons in active concert or participation with them are enjoined from enforcing the Age Rule against Plaintiff, unless and until such Age Rule is contained in a fully effective collective bargaining agreement that would apply to her, as permitted by law.

**IT IS SO ORDERED**.

DATED this 17th day of June 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge